UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LORETTA HARPER,<br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | Case No. 1:12-cv-656<br>Beckwith, J.<br>Litkovitz, M.J.<br><br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply memorandum. (Doc. 16).

I. Procedural Background

Plaintiff filed applications for DIB and SSI in September 2008, alleging disability since January 27, 2003 due to irritable bowel syndrome (IBS) and a thumb injury. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Donald A. Becher. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On November 16, 2010, the ALJ issued a decision denying plaintiff's DIB and SSI applications.

II. Analysis

A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

B. **The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2008.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since January 27, 2003, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following medically determinable impairments: left thumb impairments status post surgeries (20 CFR 404.1521 *et seq.* and 416.921 *et seq*).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq*).

(Tr. 10-11).

C. **Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Error

Plaintiff's sole argument on appeal is that the ALJ erred at Step Two of the sequential disability analysis by finding that her thumb injury was not a severe impairment. Plaintiff alleges she suffered an injury to her left thumb which required multiple surgeries, and that her treating orthopedic hand surgeon, Thomas Kiefhaber, M.D., opined that she has permanent limitations in gripping, holding, and carrying objecting weighing more than five pounds with her left hand and thumb. (Doc. 11 at 5, citing Tr. 229). For the following reasons, the undersigned recommends that the ALJ's determination be affirmed.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c),

4

416.920(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a *"de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). See also *Rogers*, 486 F.3d at 243 n.2.

The medical evidence of plaintiff's thumb impairment is as follows. In January 2003, plaintiff was injured at work when a piece of fiberglass from a food service tray pierced her left thumb. (Tr. 225). Plaintiff underwent outpatient surgery in February 2003 to remove the fragments. (Tr. 210). In March 2003, plaintiff continued to experience pain consistent with retained fragments in the thumb. (Tr. 211). Consequently, she underwent a second outpatient surgery in April 2003 during which further fibers were removed. (Tr. 223). Shortly thereafter, plaintiff continued to report sensations of remaining fibers in her hand. (Tr. 212). Upon

5

inspection, no fibers were visible and plaintiff was referred to Dr. Kiefhaber for further consultation. *Id.*

On October 23, 2003, plaintiff treated with Dr. Kiefhaber and reported stiffness and a "painful prickling sensation on the ulnar aspect of her thumb." (Tr. 225). Physical examination revealed that plaintiff had full arc of motion from zero to 45 degrees in her metacarpophalangeal (MP) joint; full extension to 15 degrees in the interphalangeal joint but her flexion was "limited to 25 degrees actively and passively." *Id.* Left hand grip strength was decreased on the left to 15 pounds compared with 70 pounds on the right and pinch strength on the left was decreased for five pounds compared with 10 pounds on the right. *Id.* Dr. Kiefhaber recommended physical therapy and possibly surgery if therapy was not successful. (Tr. 226).

Plaintiff continued to report pain following therapy at a November 2003 follow-up visit. (Tr. 226). Physical examination results were unchanged from her prior visit and Dr. Kiefhaber noted that plaintiff was not making "particularly good progress." (Tr. 227). Dr. Kiefhaber recommended a third surgery to extend plaintiff's incision and to look for further fiberglass fragments. *Id.*

On January 14, 2004, plaintiff underwent her third outpatient surgery - a scar excision – performed by Dr. Kiefhaber. (Tr. 240). No further fiberglass fragments were found but plaintiff received z-plasty to protect against postoperative extension contracture. *Id.* Plaintiff was advised to follow up with aggressive range of motion physical therapy. *Id.* Treatment notes from January through June 2004 include: findings that plaintiff continued to have loss of range of motion in her left thumb; Dr. Kiefhaber's opinion that her left thumb motion will never return completely and that she will have a permanent five pound lifting restriction with her left

6

upper extremity; and plaintiff's ongoing reports of discomfort. (Tr. 228-29).

In a June 27, 2005 letter to a workers' compensation attorney, Dr. Kiefhaber reported that plaintiff had a "slight loss of motion" in her left thumb. (Tr. 234). Dr. Kiefhaber further identified that the "pad of her thumb is entirely normal . . . [s]he has normal sensation in this region." Id. Dr. Kiefhaber concluded that plaintiff "has excellent grip strength. Her pin strength is decreased but is still very functional. She even has functional arch of motion at the interphalangeal joint although it is not full. [Plaintiff] does not have a 'loss of use' of her left thumb." Id. However, on September 12, 2005, Dr. Kiefhaber opined in a treatment note that plaintiff had a permanent restriction which precluded her from doing heavy, repetitive manual labor involving the use of her left thumb. (Tr. 230-31). The record contains no notes or treatment records from Dr. Kiefhaber beyond the September 2005 treatment notes.

On December 2, 2008, plaintiff was examined for disability purposes by Philip Swedberg, M.D. (Tr. 266-72). Examination revealed that muscle and grip strength, pinprick, and light touch were well-preserved in the upper extremities and that plaintiff had normal bilateral manipulative ability. (Tr. 267). Plaintiff also exhibited a limited range of motion in her left thumb at the interphalangeal joint with approximately five degrees of flexion and extension, but Dr. Swedberg found that plaintiff's grasp strength and manipulative ability were well-preserved bilaterally and that she had no difficulty picking up large and small objects with either hand. Id. Dr. Swedberg diagnosed plaintiff with left thumb pain and opined that plaintiff was capable of performing activities commensurate with her age and "has no difficulty reaching, grasping, and handling objects." (Tr. 268).

Non-examining state agency physician Leslie Green, M.D., reviewed plaintiff's records in

7

January 2009 and opined that plaintiff's thumb impairment was not severe. (Tr. 273). This opinion was affirmed by Jerry McCloud, M.D., another state agency physician, in March 2009. (Tr. 275).

Plaintiff's treating primary care physician, Maurice Swanson, M.D., provided a medical assessment on March 24, 2010. (Tr. 276-78). With regard to plaintiff's ability to lift and carry, Dr. Swanson wrote, "Per [patient], Dr. Tom Kiefhaber has restricted [her] lifting to [five pounds] with left hand." (Tr. 276). Dr. Swanson further opined that plaintiff had limitations in her ability to handle, finger, feel, push, and pull based on findings of "pain/weakness" in her left thumb. (Tr. 277).

The ALJ determined that the above evidence did not demonstrate that plaintiff's left thumb impairment was severe. The ALJ acknowledged that Dr. Kiefhaber's June 2004 opinion reflected that plaintiff had severe limitations in the use of her left hand. (Tr. 13, citing Tr. 229) (opining that plaintiff was unable to grasp objects in a "forceful manor [sic]"). However, the ALJ gave this opinion little weight due to its inconsistency with Dr. Kiefhaber's June 2005 opinion that plaintiff had excellent grip strength and did not have a "loss of use" of her left thumb. (Tr. 13, citing Tr. 234). The ALJ also gave little weight to Dr. Swanson's opinion that plaintiff had left upper extremity limitations because this opinion was based upon Dr. Kiefhaber's "inconsistent and difficult to reconcile" opinions. (Tr. 14, citing Tr. 276-78). In contrast, the ALJ afforded great weight to the 2008 opinion of consultative examiner Dr. Swedberg who opined that plaintiff had no difficulty in reaching, grasping, and handling objects, finding that his opinion was supported by concurrent examination findings and was consistent with the record as a whole. (Tr. 13, citing Tr. 267). Based on Dr. Swedberg's opinion, the ALJ

8

determined that plaintiff's thumb impairment was not severe as it did not significantly limit her ability to perform basic work activities.

Plaintiff argues that the ALJ's finding is erroneous as it is clearly contradicted by Dr. Kiefhaber's June 2004 opinion that plaintiff has severe limitations in the use of her left hand and thumb. (Doc. 11 at 5). Plaintiff's Statement of Errors contains no discussion of Dr. Kiefhaber's inconsistent June 2005 letter. However, in her reply brief, plaintiff mentions but does little to reconcile this inconsistency aside from noting that the June 2005 opinion related to plaintiff's workers' compensation claim. (Doc. 16 at 2-3). Plaintiff goes on to note that Dr. Kiefhaber reiterated in September 2005 that plaintiff had a permanent left thumb work restriction to support her claim that the ALJ erred by not finding a severe left thumb impairment. (Doc. 16 at 2, citing Tr. 230).

The undersigned finds the ALJ's decision to discount the opinion of Dr. Kiefhaber based on the inconsistencies cited and its inconsistency with the more recent findings of Dr. Swedberg is supported by substantial evidence. The opinion of a treating physician like Dr. Kiefhaber should be afforded controlling weight where two conditions are met: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). Here, the ALJ afforded little weight to the opinion of Dr. Kiefhaber, plaintiff's treating hand surgeon, because his June 2004 opinion that plaintiff had severe limitations, including diminished grip strength, was inconsistent with his June 2005 opinion that plaintiff had functional use of her left thumb

9

and "excellent grip strength." The record evidence from Dr. Kiefhaber, discussed above, substantially supports the ALJ's conclusion that Dr. Kiefhaber provided two irreconcilable opinions on the severity of plaintiff's left thumb impairment. In light of this internal inconsistency, the ALJ was permitted to discount Dr. Kiefhaber's opinion. *Wilson*, 378 F.3d at 544.

Likewise, the ALJ's decision to discount Dr. Swanson's opinion that plaintiff has functional limitations in the use of her left thumb is substantially supported. When asked to identify the medical findings supporting his opinion, Dr. Swanson simply stated that plaintiff reported to him that Dr. Kiefhaber had restricted her to lifting no more than five pounds. (Tr. 276). It therefore appears that Dr. Swanson's opinion was based not on his own objective or clinical findings, but on plaintiff's *reports* to Dr. Swanson regarding Dr. Kiefhaber's medical opinion. The remainder of Dr. Swanson's opinion - that plaintiff had significant manipulating limitations (Tr. 277-78) – appears to be based solely on her subjective reports of left thumb pain and weakness as Dr. Swanson has not identified any other support for his opinion. Because Dr. Swanson failed to support his opinion with objective or clinical findings and instead relied on plaintiff's subjective complaints, the ALJ's decision to discount Dr. Swanson's opinion is substantially supported. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

The ALJ's nonseverity finding is further supported by Dr. Swedberg's 2008 consultative examination. Dr. Swedberg found that while plaintiff had a limited range of motion, she maintained full functional use of her left thumb and was able to pick up and manipulate objects bilaterally. (Tr. 267). Notably, this opinion is the most current medical opinion based on

objective examination findings. Plaintiff has identified no current objective evidence that is inconsistent with Dr. Swedberg's findings that plaintiff has full functional use of her left thumb.

The ALJ reasonably determined that the evidence of record did not demonstrate that plaintiff's left thumb impairment significantly limited her ability to perform basic work activities. The ALJ's determination that plaintiff did not have a severe impairment is substantially supported by the record evidence. Consequently, the ALJ did not err by concluding his analysis at Step Two of the sequential evaluation process.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 7/9/2013

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| LORETTA HARPER,<br>Plaintiff, | Case No. 1:12-cv-656<br>Beckwith, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | |

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).