UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Loretta Harper, : Case No. 1:12-cv-656
:
   Plaintiff, :
:
vs. :
:
Commissioner of Social Security, :
:
   Defendant. :

**ORDER**

    Before the Court are Plaintiff's objections to the Magistrate Judge's Report and Recommendation. (Doc. 18) In her report (Doc. 17), the Magistrate Judge recommended that this Court affirm the decision of the Commissioner denying Plaintiff's application for disability benefits. For the following reasons, the Court overrules the Plaintiff's objections.

**FACTUAL BACKGROUND**

    Loretta Harper filed an application for benefits in September 2008, alleging a disability onset date of January 27, 2003. She claimed she was disabled by irritable bowel syndrome and a thumb injury sustained in a 2003 workplace accident. After her claim was administratively denied, an ALJ conducted an evidentiary hearing in October 2010, and subsequently issued a written decision denying her application. (TR 5-14)

    The ALJ found that Harper has a left thumb impairment following her original injury and three subsequent surgeries. However, he concluded that her impairment has not significantly limited her ability to perform basic work-related activities for 12 consecutive months; he therefore ended his analysis at Step Two of the sequential

evaluation process, concluding she is not disabled.  Harper was originally injured when a kitchen serving tray broke, and pieces of fiberglass became embedded in her thumb.  At the ALJ hearing, she testified that she has trouble grasping with her left hand due to her thumb injury, and that it aches and throbs to the point that it can wake her at night.  She has trouble buttoning clothes, gripping and holding objects.  She said she can lift up to five pounds with her left hand (she is right-hand dominant).  She also testified that she has irritable bowel syndrome and requires frequent restroom breaks.

The medical evidence establishes that Harper has had three surgeries on her left thumb.  The first was shortly after the accident at work, and the surgery removed fiberglass fragments from her thumb.  She continued to experience pain due to some fragments that remained, and she had a second surgery in April 2003 to remove additional fragments.  She continued to complain of pain and discomfort, and she was referred to Dr. Kiefhaber, a hand surgeon.  Dr. Kiefhaber's examination on October 23, 2003 showed full motion (0 to 45 degrees) in her metacarpophalangeal (MP) joint, and full extension in her interphalangeal joint, but flexion was limited to 25 degrees.  Her left hand grip strength was 15 pounds left, compared with 70 pounds right, and her left-hand pinch strength was also decreased.  Dr. Kiefhaber recommended aggressive physical therapy, and surgery if that proved unsuccessful.  (TR 225-226)  Harper began hand therapy but continued to report pain, and was convinced that something remained in her thumb.  Dr. Kiefhaber recommended additional surgery to look for fragments in her thumb, and to perform a DIP (distal interphalangeal joint) capsulotomy, as he

suspected her pain was caused by DIP capsular tightness.[1]  (TR 227)   Harper's third surgery occurred on January 14, 2004, but no additional fiberglass fragments were found.  She began therapy, and two weeks post-surgery, Dr. Kiefhaber noted that she was making excellent progress and recommended continuing aggressive therapy.  (TR 227)   Over the next few months, she continued therapy but lost some motion, and complained of lingering pain and inability to pick things up with her left hand.  Dr. Kiefhaber stated in April 2004 that he did not think that all of her motion would ever completely return.  (TR 228) In a June 7, 2004 examination, he noted that her DIP joint was stiff with limited motion, her grip strength right was 50 pounds and 15 pounds left, pinch strength 18 pounds right, 4 pounds left.  He believed that she would have a permanent five-pound lifting restriction on her left hand, could not "forcefully" grasp objects in the thumb-index finger web space, but could manipulate parts with her fingertips.  (TR 229)

Harper saw Kiefhaber again in September 2005, when he noted continued DIP joint stiffness.  Her grip strength left increased to 20 pounds, and was 45 pounds on the right.  He stated that she should not be doing heavy, repetitive manual labor using her left thumb.  But he encouraged her to use her thumb as much as possible, noting that she has a permanent impairment that did not amount to "a complete loss of use of her left thumb."  (TR 231-232)

For purposes of her benefits application, Harper was examined by Dr. Phillip Swedberg on December 2, 2008.  (TR 266-272)  He noted that she continued to have

---

[1] The interphalangeal joint is the finger joint closest to the tip of the thumb.  See www.assh.org/public/HandAnatomy, last accessed August 5, 2013.

decreased range of motion in her DIP joint, but otherwise her grasp strength and manipulative ability were "well-preserved bilaterally." She had no difficulty picking up small and large objects with both of her hands. Dr. Swedborg concluded that she had no difficulty reaching, grasping, and handling objects, and found that her abilities and coordination were normal. (TR 266-268)

The ALJ found that the objective medical evidence was not consistent with Harper's subjective descriptions of her inability to use her left hand. He placed great weight on Dr. Swedborg's examination and analysis, noting he had the opportunity to examine her and that his opinion was consistent with the record as a whole. The ALJ gave less weight to Dr. Kiefhaber's opinion that she had a permanent five-pound lifting and gripping restriction, citing Kiefhaber's June 27, 2005 letter to Harper's worker's compensation attorney; Dr. Kiefhaber stated that she has a "slight loss of motion" at the DIP joint, but:

> ... the pad of her thumb is entirely normal. There is no scar in this area. She has normal sensation in this region. She has excellent grip strength. Her pin strength is decreased but is still very functional. She even has a functional arch of motion at the interphalangeal joint although it is not full. Ms. Harper does not have a "loss of use" of her left thumb.

(TR 234) Dr. Kiefhaber found that Harper has a permanent partial impairment rating, stating that he agreed with the findings of Dr. Franklin. Franklin reported to Harper's employer on July 2, 2004 that, for purposes of her compensation claim, she was "unrestricted for the use of digits two through five of the left hand, but she can essentially rarely and/or minimally grip with the left hand or pinch with the left hand and should not use vibrating tools in the left hand. She would have great difficulty

manipulating a very small object with the left hand." (TR 221)  Franklin also found that she had reached maximum medical improvement, and could not return to her former job as a dietary helper (which required frequent lifting of heavy serving trays of 30-50 pounds).  The ALJ found that Dr. Kiefhaber's two opinions were difficult to reconcile and were therefore given less weight.  The ALJ gave little weight to Harper's treating primary care physician, Dr. Maurice Swanson, because his assessment of her left thumb impairment was based upon Harper's report about Dr. Kiefhaber's opinion.  He also gave greater weight to Dr. Swedborg's examination findings because they were the most recent in the record.

The ALJ also addressed her claims regarding IBS, noting that she stated in her application that she needed to use the bathroom 3-4 times a day.  The ALJ cited the vocational expert's testimony that at least 3 scheduled breaks are permitted throughout a typical work day, and concluded that her condition did not appear to preclude work. (TR 12)  The ALJ therefore concluded that Harper did not suffer a "severe impairment" and was not disabled.  Harper requested the Appeals Council to review the ALJ's decision, but the Council rejected her request and found no reason to disturb the ALJ's decision. (TR 1-2)  She then timely sought judicial review of the Commissioner's final decision by filing her complaint in this Court. (Doc. 1)  Her sole argument on appeal is that the Commissioner erred in concluding that her left thumb injury is not a "severe" impairment at Step Two of the sequential analysis.

The Magistrate Judge recommended that the Court affirm the Commissioner's final decision, because the ALJ's decision to substantially discount Dr. Kiefhaber's opinion is supported by substantial evidence in the record.  She reached the same

conclusion with respect to Dr. Swanson's assessment, which was based upon Harper's descriptions to Swanson about Dr. Kiefhaber's opinions. The Magistrate Judge concluded that the ALJ did not err in finding that Harper does not have a severe impairment, and therefore ending his analysis at Step Two of the sequential evaluation outline.

Harper objects, contending that Dr. Kiefhaber's June 27, 2005 opinion regarding Harper's worker's compensation claim is not inconsistent with his 2004 opinion nor his September 2005 office note, where he stated that she has a "persistent impairment secondary to the loss of motion and decreased grip strength but does not have a complete loss of use of the left thumb." (TR 230-231) She argues that both the ALJ and the Magistrate Judge misinterpreted Kiefhaber's June 27 letter, and failed to consider her arguments concerning the different standards that apply to an Ohio worker's compensation claim and a federal disability benefits claim. She also argues that Dr. Swedborg's opinion did not focus on her left hand, and is contradicted by his objective findings, as he noted decreased grip strength in her left hand based upon a dynamometer reading, and decreased range of motion in her left thumb's DIP joint. She argues that the Commissioner's decision should be reversed and the matter remanded for a full sequential analysis of her claim.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's final decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a

conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of the fact to be established.  Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury.  Id.

If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence.  Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981).  The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The district court reviews de novo a Magistrate Judge's report and recommendation regarding Social Security benefits claims.  Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

## ANALYSIS

Under applicable Social Security regulations, a treating physician's opinion is accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]"  Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007).  The regulations provide that, in considering any medical opinion, "... the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will

give to that opinion." 20 C.F.R. 416.927(d)(4). More weight is generally given to an examining source than to a records reviewer, but the weight accorded to any opinion must be based on the evidence that supports the opinion, and its consistency with the record as a whole. The ALJ must identify specific reasons for discounting a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Rogers, 486 F.3d at 242.

20 C.F.R. 416.921 states that a "non-severe impairment" is one that does not significantly limit a claimant's physical ability to do basic work activities. These include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. Dr. Kiefhaber's observations support the ALJ's conclusion that Harper's left thumb impairment is not "severe" such that her ability to do these basic work activities is **significantly** limited.

Harper argues that the ALJ and the Magistrate Judge improperly focused on Dr. Kiefhaber's conclusion that she did not have a "complete loss of use" in rejecting his opinion. The Court disagrees. The ALJ relied on all of the observations made by Dr. Kiefhaber: in June 2004, he stated that Harper could return to work with lifting restrictions and noted she was severely restricted in gripping, yet his June 27, 2005 letter states that she had "excellent grip strength." In that letter, he also stated that her pin strength was decreased but remained "very functional," and that her DIP arch of motion was "functional." Even accepting Harper's argument that his statement about her lack of a "complete loss of use" has a specialized meaning for purposes of worker's compensation ratings, the other discrepancies between Dr. Kiefhaber's letter and his

-8-

2004 progress note amply support the ALJ's decision to accord less weight to his opinion.

The Court also agrees with the Magistrate Judge that the ALJ properly discounted the assessment of Dr. Swanson, Harper's treating physician. As is evident from the written assessment form, he based his opinion upon Harper's descriptions of Dr. Kiefhaber's opinion; see TR 276, noting that "per pt, Dr. Tom Kiefhaber has restricted lifting...". Moreover, the ALJ's greater weight given to the consultative examination by Dr. Swedborg was not erroneous, especially in view of the fact that it is the most recent exam and was three years later than Dr. Kiefhaber's last examination in September 2005. While Dr. Swedborg did note a difference in measured strength between Harper's right and left hands, he concluded (as did Dr. Kiefhaber) that her left hand was functional, and that she had "well-preserved" bilateral grasp strength and manipulative ability. The Court finds that substantial evidence in the record as a whole supports the ALJ's conclusion that Harper does not have a "severe" impairment.

## CONCLUSION

For all of these reasons, Plaintiff's objections to the Magistrate Judge's Report and Recommendation are overruled. The Court adopts the Report and Recommendation in full. The Court affirms the decision of the Commissioner that Plaintiff is not entitled to an award of disability benefits.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: August 19, 2013        s/Sandra S. Beckwith
                                        Sandra S. Beckwith
                                        Senior United States District Judge